UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

SAMANTHA LAWRENCE,

                            Plaintiff,

- versus -

CONTINENTAL CASUALTY COMPANY, INC.,

                            Defendant.

MEMORANDUM
AND ORDER
12-CV-412

APPEARANCES:

    COLLIAU CARLUCCIO KEENER MORROW PETERSON & PARSONS
        125 Broad Street, 7th Floor
        New York, New York  10004
    By:   Dean J. Vigliano
        *Attorneys for Plaintiff*

    REIBMAN & WEINER
        26 Court Street
        Brooklyn, New York  11242
    By:   Steven M. Weiner
        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        Samantha Lawrence brings this diversity action against Continental Casualty Company, Inc. ("Continental") pursuant to New York Insurance Law § 3420(a)(2) to collect a judgment entered in favor of Lawrence in New York state court.  The parties have cross-moved for summary judgment.  For the reasons set forth below,  Continental's motion for summary judgment is denied and Lawrence's motion for summary judgment is granted.

BACKGROUND

A.  *Factual Background*

The following facts are taken from Local Rule 56.1 statements,[1] affidavits, deposition excerpts, and other documentary evidence submitted by the parties. Unless otherwise noted, the facts set forth below are uncontroverted.

1.  *The Continental Policy*

Continental issued Policy No. 2090704801 ("Policy") to Judy Miracle Nail, Inc. ("Miracle Nail") for the period from July 5, 2008 to July 5, 2009. Continental 56.1 ¶ 1, ECF No. 40-16 (citing Dean J. Vigliano Aff. in Supp. Continental Mot. Summ. J. Ex. J (Continental Policy), ECF No. 40-12. The Policy included coverage for "Beauticians Malpractice Liability" up to $1,000,000 for each occurrence. Vigliano Aff. Ex. J (Continental Policy). Appended to the Policy was an endorsement as to Continental's "Beauticians' Malpractice Liability Coverage." Vigliano Aff. Ex. J (Continental Policy, Beauticians' Malpractice Liability Coverage Endorsement). That endorsement contained a clause that stated:

> This insurance does not apply to:
>
> . . .
>
> i.  "Bodily injury" or "property damage" arising out of services rendered; or
>
>     (1) Preparations;
>     (2) Products;
>     (3) Apparatus; or

---

[1] Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. *See, e.g.* Continental Rule 56.1 ¶ 2a ("While 'willful' is not defined in the policy; it should be given its plain and ordinary meaning."); Lawrence Resp. Continental Rule 56.1 ¶ 2a ("As James Hoefer, Continental's representative, testified at deposition the term 'willful' as set forth in the policy is not defined. Mr. Hoefer defines 'willful' as 'deliberate as opposed to inadvertent.'"). The facts, as set forth in this memorandum and order, are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1, as well as other documentary evidence submitted by the parties.

>   (4)   Equipment;
>
>   if rendered or used in willful violation of any Federal, State, Municipal, or other law or regulation.

Vigliano Aff. Ex. J (Continental Policy, Beauticians' Malpractice Liability Coverage Endorsement).

### 2. *The Waxing Injury*

On November 1, 2008 Lawrence went to Miracle Nail for a leg waxing.[2] Continental 56.1 ¶ 3 (citing Complaint, ECF No. 1). When she arrived at Miracle Nail, she spoke with a woman and informed her that she wanted to get her legs waxed. Steven M. Weiner Decl. in Supp. Lawrence Mot. Summ. J. Ex. 1 14:17-19, 15:6-9, 15:24-16:2 (Lawrence Dep.), ECF NO. 41-2. That woman then directed Lawrence to another woman, who took her into a private room to perform the waxing. Weiner Decl. Ex. 1 at 16:7-8, 17:9-13 (Lawrence Dep.); Weiner Decl. Ex. 2 ¶¶ 4-5 (Chanel Jones Decl.), ECF No. 41-3. During the course of her waxing Lawrence sustained a burn to her thigh. Weiner Decl. Ex. 1 at 19:14-24 (Lawrence Dep.); Complaint ¶ 18. The woman performing the waxing then left and returned with her manager, a third woman, to the private room. Weiner Decl. Ex. 1 at 20:5-14 (Lawrence Dep.); Weiner Decl. Ex. 2 ¶ 6 (Jones Decl.).

### 3. *Continental's Notice of the Waxing Injury*

On November 17, 2008 Lawrence's counsel, Steven M. Weiner, sent a letter to Miracle Nail informing the salon of Lawrence's injury and requesting the salon's attorney or

---

[2] Continental states in its Local Rule 56.1 statement that Lawrence went to Miracle Nails for a bikini waxing. Continental Rule 56.1 ¶ 3. However, Lawrence's complaint in this action states that she went to Miracle Nails for a leg waxing, a fact that is consistent with her allegation that she sustained a burn to her thigh during the course of the waxing. Vigliano Decl. Ex. H ¶¶ 17-18.

insurance company representative contact him.[3] Lawrence Resp. Continental Rule 56.1 ¶ 4, ECF No. 38 (citing Weiner Decl. Ex. 3 (Nov. 17, 2008 Letter), ECF No. 41-4).

    4.    *Continental's Investigation*

On December 3, 2008 Continental assigned the firm GAB Robins to investigate Lawrence's claim that she had sustained a burn during a waxing at Miracle Nail.[4] Continental 56.1 ¶ 5 (citing Vigliano Aff. Ex. C (Claim History), ECF No. 40-5); Weiner Decl. Ex. 5 (Liability Claim Summary), ECF No. 41-6. On December 26, 2008 Kathlyn Casatelli, an investigator with GAB Robins, issued a report containing the following findings:

- On November 1, 2008 Guan Zhao Ma, an employee of Miracle Nail, was assigned by her supervisor, Xiuli Shen, to perform a waxing on Lawrence.

- Ma stated that Lawrence had an immediate reaction to the waxing.

- Ma has a license to practice "nail specialty" from the New York State Division of Licensing Services, but she does not have a license to perform waxing.[5]

---

[3] Continental asserts in its Local Rule 56.1 statement that: "On November 28, 2008, plaintiff made a Notice of Claim with Continental regarding the incident." Continental 56.1 ¶ 4. The citation following this assertion is to a page that is Bates-stamped CCC000019, which appears nowhere in the documentary evidence submitted by Continental. I was able to find this particular Bates-stamped page in the documentary evidence submitted by Lawrence. *See* Weiner Decl. Ex. 10, ECF No. 41-11. But this page is a copy of a letter dated February 19, 2009 from Weiner to a Claims Specialist at Continental, objecting to a letter from Continental dated January 14, 2009 disclaiming coverage for Lawrence's injury. Lawrence objects to Continental's assertion but asserts in opposition that Weiner sent "a claim letter, dated November 17, 2008" to Miracle Nail. Lawrence Resp. Continental Rule 56.1 ¶ 4.

[4] Lawrence disputes this fact, asserting that Continental "authorized a 'partial investigation.'" Lawrence Resp. Continental Rule 56.1 ¶ 5. Continental also asserts that it assigned GAB Robins to "obtain a signed statement from the insured." Continental Rule 56.1 ¶ 5. Lawrence disputes this fact on the ground that Continental has failed to produce any "memorialized communication" to this effect. Lawrence Resp. Continental Rule 56.1 ¶ 5. Continental cites as support for this assertion a Claim History, which indicates that Continental planned to assign GAB Robins to "obtain[ ] letter from clmt, ID of the beauty operator involved . . . as well as verification of licenses." Vigliano Aff. Ex. C (Claim History), ECF No. 40-5.

[5] Lawrence disputes these facts on the grounds that "the assertions made by defendant are not 'factual findings concerning the claim'" and that Ma's "statement is hearsay and not worthy of belief according to [Casatelli]." Lawrence Resp. Continental Rule 56.1 ¶ 6. Lawrence misapprehends the factual assertion made by Continental here. Continental asserts that GAB Robins issued this report and that it contained these factual findings. Continental Rule 56.1 ¶ 6.

Continental Rule 56.1 ¶ 6 (citing Vigliano Aff. Ex. D (GAB Robins Report), ECF No. 40-6). Casatelli also noted in the report that Ma had stated "she has been doing waxing for about a year or so."[6] Vigliano Aff. Ex. D (GAB Robins Report).

On March 12, 2013 Lawrence's counsel deposed Casatelli. *See* Weiner Decl. Ex. 4 (Casatelli Dep.), ECF No. 41-5. Casatelli testified that she obtained a signed statement from Ma, but that she did not obtain a signed statement from Shen.[7] Weiner Decl. Ex. 4 at 74:11-22 (Casatelli Dep.); *see also* Weiner Decl. Ex. 7 at 44:8-9 (Hoefer Dep.), ECF No. 41-8. Casatelli further testified that it was her understanding from Ma and Shen that they did not believe they needed a license to perform waxing. Weiner Decl. Ex. 4 at 81:22-23, 99:17-100-23 (Casatelli Dep.).

     5.    *Continental's Disclaimer to Miracle Nail*

On January 14, 2009 Continental informed Miracle Nail and Lawrence's counsel by letter that it was denying coverage for Lawrence's injury. Continental Rule 56.1 ¶ 8 (citing Vigliano Aff. Ex. F (Jan. 14, 2009 Letter), ECF No. 40-8). The letter stated, in relevant part:

> The basis for this denial is that the technician performing the service was not licensed to perform the waxing services which is a violation of law and bodily injury arising out of services rendered in willful violation of the law are excluded from coverage under the [Continental] policy, as more fully discussed below.

Vigliano Aff. Ex. F (Jan. 14, 2009 Letter). On February 19, 2009 Lawrence's counsel responded to this letter and requested that Continental "reconsider its position with respect to coverage," noting that Lawrence had filed a complaint in state court alleging that her injury was caused by

---

[6] Continental asserts that Ma admitted to Casatelli that she "had been performing unauthorized and illegal waxings for approximately one year," which twists the statement Casatelli reported that Ma had made. Continental Rule 56.1 ¶ 7. Lawrence disputes this fact on the same ground as above and I reject it for the same reasons.

[7] Casatelli did testify that she spoke with Shen on the telephone prior to interviewing Ma at the salon and that she and Shen spoke "[a]bout what happened, but not in too much detail" because "her English wasn't very good." Weiner Decl. Ex. 4 at 75:3-18 (Casatelli Dep.).

5

negligence on the part of Miracle Nail. Weiner Decl. Ex. 10 (Feb. 19, 2009 Letter), ECF No. 41-11.

      6.    *The Underlying State Court Action*

On April 23, 2009 Lawrence brought an action against Miracle Nail in the Supreme Court of the State of New York, Kings County. Continental Rule 56.1 ¶ 11; *see also* Weiner Decl. Ex. 11 (State Court Complaint), ECF No. 41-12. On June 8, 2010 the Clerk of the Supreme Court entered default judgment against Miracle Nail. Continental Rule 56.1 ¶ 11 (citing Vigliano Aff. Ex. G (Judgment with Costs), ECF No. 40-9). The Supreme Court held an inquest on June 21, 2010 and ordered judgment for Lawrence in the amount of $132,526.50 on August 30, 2010.[8] Vigliano Aff. Ex. G (Judgment with Costs). On November 8, 2011 Lawrence's counsel served Continental and Miracle Nail each with a Notice of Entry of Judgment. Lawrence Rule 56.1 ¶ 13 (citing Weiner Decl. Ex. 4 (Nov. 8, 2011 Letter), ECF No. 41-15. Lawrence has not received any portion of the judgment to date.[9] Lawrence Rule 56.1 ¶ 15.

B.    *Procedural History*

Lawrence commenced this action against Continental on January 30, 2013. *See* Complaint, ECF No. 1. Continental filed its answer to the complaint on March 16, 2012. *See* Answer, ECF No. 9. The parties completed discovery on May 3, 2013. *See* Minute Entry, April 19, 2013 (noting completion of factual discovery and setting May 3, 2013 deadline for Continental's production of an expert report). Continental filed its motion for summary

---

[8] On July 2, 2009 Lawrence's counsel informed Continental by letter that Lawrence planned to "move for a default judgment shortly" and would "ask the court to conduct an inquest on damages." Weiner Decl. Ex. 11 (July 2, 2009 Letter).

[9] Continental objects to this assertion on the ground that it is irrelevant. Continental Resp. Lawrence Rule 56.1 ¶ 15, ECF No. 45. Given that the entire purpose of this action is to collect on that very judgment, I fail to see how this assertion is irrelevant.

6

judgment on June 13, 2013.  *See* Continental Mot. Summ. J., ECF No. 40; *see also* Continental Mem. in Supp. Mot. Summ. J., ECF No. 40-1.  Lawrence filed her cross-motion for summary judgment on July 12, 2013.  Lawrence Cross-Mot. Summ. J., ECF No. 41; *see also* Lawrence Mem. in Supp. Cross-Mot. Summ. J., ECF No. 43.  I heard oral argument on August 16, 2013.

## DISCUSSION

A. *Summary Judgment Standard*

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if its resolution "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

B. *New York Insurance Law § 3420*

New York Insurance Law ("N.Y. Ins. Law") § 3420(a)(2) provides, in relevant part, that every insurance policy issued in New York must include

> [a] provision that in case judgment against the insured . . . in an action brought to recover damages for injury sustained . . . during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured . . . and upon the insurer, then an action may . . . be maintained against the insurer under the terms of the policy or contract for the amount of such judgment . . . .

N.Y. Ins. Law § 3420(a)(2) (McKinney).[10]  N.Y. Ins. Law § 3420(b) then provides that, subject to the conditions set forth in § 3420(a)(2), "any person who has . . . obtained a judgment against the insured . . . for injury sustained or loss or damage occasioned during the life of the policy or contract" may maintain an action against the insurer to recover the amount of the judgment against the insured. *Id*. § 3420(b).  A person "who brings such an action generally 'stands in the shoes' of the insured vis-à-vis the insurer, and [his] 'rights under the policy are no greater and no less than that of the insured.'"  *Continental Insurance Co. v. Atlantic Casualty Insurance Co.*, No. 07-cv-3635, 2009 WL 1564144, at *4 (S.D.N.Y. June 4, 2009) (quoting *Sales v. United States Underwriters Insurance Co.*, No. 93-cv-7580, 1995 WL 144783, at *26 (S.D.N.Y. Apr. 3, 1995)) (citing *Webster v. Mount Vernon Fire Insurance Co.*, 368 F.3d 209, 212 (2d Cir. 2004) (holding that N.Y. Ins. Law § 3420(a)(2) conditions the insurer's liability for the judgment against the insured on whether the insurer would be liable to the insured under the terms of the policy).

C.     *Analysis*

The parties do not dispute the facts that Lawrence obtained a judgment against Miracle Nail for a waxing injury she sustained during the life of the Continental policy, Lawrence's counsel served both Continental and Miracle Nail with a Notice of Entry of Judgment, and the judgment remains unsatisfied more than thirty days thereafter.

Continental asserts, however, that it is entitled to judgment as a matter of law because Lawrence's claim is excluded from coverage under the Continental Policy.  Specifically, Continental argues that Miracle Nail and its employee performed Lawrence's waxing in willful

---

[10]   The parties do not argue that the law of a state other than New York should apply here, and the Second Circuit has held that "where the parties agree that New York law controls, this is sufficient to establish choice of law."  *Federal Insurance Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

violation of a New York state law or regulation, thereby excluding from coverage any injury sustained as a result of the waxing.

Lawrence counters that she is entitled to judgment as a matter of law because Continental breached its duty to defend Miracle Nail in the underlying state court action, and an insurer that breaches this duty cannot later rely on a policy exclusion as a defense against a subsequent action based on N.Y. Ins. Law § 3420.  Alternatively, Lawrence argues that Continental has failed to establish the policy exclusion on which it rests its defense.

    1.    *The Duty to Defend*

"Under New York law, an insurer's duty to defend is extremely broad and distinct from the duty to indemnify." *Napoli, Kaiser & Bern, LLP v. Westport Insurance Corp.*, 295 F. Supp. 2d 335, 338 (S.D.N.Y. 2003) (citing *Maryland Casualty Co. v. Continental Casualty Co.*, 332 F.3d 145, 160 (2d Cir. 2003)); *see also Automobile Insurance Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (N.Y. 2006) ("It is well settled that an insurance company's duty to defend is broader than its duty to indemnify.").  "To determine whether the duty to defend exists, courts first look to 'the allegations within the four corners of the underlying complaint.'" *Napoli, Kaiser & Bern*, 295 F. Supp. 2d at 338 (quoting *Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co.*, 91 N.Y.2d 169, 175 (N.Y. 1997)).  An insurer has a duty to defend "whenever the four corners of the complaint suggest – or the insurer has actual knowledge establishing – a reasonable possibility of coverage." *Continental Casualty Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 648 (N.Y. 1993) (internal quotation marks omitted); *see also Cook*, 7 N.Y.3d at 137 ("If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or

baseless the suit may be.") (quoting *Ruder & Finn v. Seaboard Surety Co.*, 52 N.Y.2d 663, 670 (N.Y. 1981) (internal quotation marks omitted)).

The duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions, Inc. v. Federal Insurance Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original); *Maryland Casualty Co.*, 332 F.3d at 160 ("[A]n insurer owes its insured no duty of defense 'if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured.'") (quoting *Frontier Insurance Co. v. State*, 87 N.Y.2d 864, 867 (N.Y. 1995)).  If an insurer "is to be 'relieved of [its] duty to defend it is obligated to demonstrate that the allegations of the complaint cast that pleading *solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.'" *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 312 (N.Y. 1984) (quoting with emphasis *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d at 325 (N.Y. 1974)).  Thus, an insurer seeking to avoid its duty to defend bears "a heavy burden in demonstrating that the allegations of the complaint cast the pleadings wholly within the exclusions and that there is no possible factual or legal basis for finding liability covered by the policy." *Napoli, Kaiser & Bern*, 295 F. Supp. 2d at 338 (internal quotation marks and citations omitted).

The duty to defend also "remains even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered." *Automobile Insurance Co.*, 7 N.Y.3d at 137 (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.3d 61, 63 (N.Y. 1991)).  It is "[f]or this reason [that] when a policy represents that it will provide the insured with a defense, [the New York Court of Appeals] ha[s] said that it actually constitutes 'litigation insurance' in addition to liability coverage." *Id.* (citing *Gillette*, 64 N.Y.2d at 310

10

(quoting *International Paper Co.*, 35 N.Y.2d at 326)). Accordingly, "an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Id*.

Under New York law, "[i]t is also well established that, when an insurer has breached its duty to defend and is called upon to indemnify its insured for a judgment entered against it, the insurer may not assert in its defense grounds that would have defeated the underlying claim against the insured." *K2 Investment Group, LLC v. American Guarantee & Liability Insurance Co.*, 2013 N.Y. Slip Op. 04270 (N.Y. 2013) (citing *Lang v. Hanover Insurance Co.*, 3 N.Y.3d 350, 356 (N.Y. 2004)). The New York Court of Appeals has therefore advised that

> an insurance company that disclaims in a situation where coverage may be arguable is well advised to seek a declaratory judgment concerning the duty to defend or indemnify the purported insured. If it disclaims and declines to defend in the underlying lawsuit without doing so, it takes the risk that the injured party will obtain a judgment against the purported insured and then seek payment pursuant to [New York] Insurance Law § 3420. Under those circumstances, having chosen not to participate in the underlying lawsuit, the insurance carrier may litigate only the validity of its disclaimer and cannot challenge the liability or damages determination underlying the judgment.

*Lang*, 3 N.Y.3d at 356. The Court has subsequently reiterated that "*Lang* means what it says: an insurance company that has disclaimed its duty to defend 'may litigate only the validity of its disclaimer.'" *K2*, 2013 N.Y. Slip Op. 04270. In other words, "[i]f the disclaimer is found bad, the insurance company must indemnify its insured for the resulting judgment, even if policy exclusions would otherwise have negated the duty to indemnify."[11] *Id*.

---

[11] The New York Court of Appeals has articulated the policy underlying this principle as follows:

11

2. *The Validity of Continental's Disclaimer*

As a threshold matter, Continental argues that Lawrence has no standing to assert that Continental breached its duty to defend Miracle Nail in the underlying state court action. This argument misconstrues Lawrence's position. Lawrence is not seeking to recover pursuant to N.Y. Ins. Law § 3420 on the theory that Continental breached its duty to defend Miracle Nail in the underlying state action. Rather, Lawrence asserts that because Continental breached its duty to defend in the underlying state action, it cannot now rely on a policy exclusion as a defense to Lawrence's recovery of the judgment obtained in that state action pursuant to N.Y. Ins. Law § 3420.

The New York Court of Appeals has addressed this very scenario. In *Lang*, it described a situation where an insurance company disclaimed coverage and declined to defend an insured against an injured party in a state action. The Court explicitly warned that a company that takes such a position hazards "the risk that the injured party will obtain a judgment against the purported insured and then seek payment pursuant to [New York] Insurance Law § 3420." *Lang*, 3 N.Y.3d at 356. Lawrence, the injured party, seeks to do exactly what the Court predicted. Under New York law, she is entitled to recover as long "the disclaimer is found bad . . . even if policy exclusions would otherwise have negated the duty to indemnify." *K2*, 2013 N.Y. Slip Op. 04270; *see also Lang*, 3 N.Y. 3d at 356 ("[H]aving chosen not to participate in the underlying lawsuit, the insurance carrier may litigate only the validity of its disclaimer and cannot challenge the liability or damages determination underlying the judgment.").

> This rule will give insurers an incentive to defend the cases they are bound by law to defend, and thus to give insureds the full benefit of their bargain. It would be unfair to insureds and would promote unnecessary and wasteful litigation, if an insurer, having wrongfully abandoned its insured's defense, could then require the insured to litigate the effect of policy exclusions on the duty to indemnify.

*K2*, 2013 N.Y. Slip Op. 04270.

12

Considering the allegations on the face of the underlying complaint, as I must, I conclude that Continental's disclaimer was not valid. The complaint alleges the following facts. While "undergoing the leg waxing treatment at Judy Miracle Nail, Inc. performed by one of its employees, agents, or contractors at its facility, [Lawrence] sustained burns to her leg which required hospital and medical care and have caused permanent scarring to her leg." Weiner Decl. Ex. 11 ¶ 7 (State Court Complaint). Miracle Nail "failed to exercise reasonable care in its duty to properly and carefully hire, train, supervise and retain its employees, who were performing services at its facility." Weiner Decl. Ex. 11 ¶ 8 (State Court Complaint). Lawrence's "injuries were the result of defendant's negligence and failures." Weiner Decl. Ex. 11 ¶ 9 (State Court Complaint).

These allegations of negligence suggest a reasonable possibility of coverage under the Continental Policy. The Continental Policy specifically provides coverage for "Beauticians Malpractice Liability." Vigliano Aff. Ex. J (Continental Policy). It defines "Beautician" as "one whose services include but are not limited to . . . hair removal." Vigliano Aff. Ex. J (Continental Policy, Beauticians' Malpractice Liability Coverage Endorsement). It states that Continental "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,'" so long as that "bodily injury" is a result of an "occurrence" in the "coverage territory" during the policy period. Vigliano Aff. Ex. J (Continental Policy, Beauticians' Malpractice Liability Coverage Endorsement). It defines "occurrence" as "an accident" and "coverage territory" as the United States of America. Vigliano Aff. Ex. J (Continental Policy, Businessowners Liability Coverage Form). Lawrence's allegations – *i.e.* that she was injured during a waxing performed by a Miracle Nail employee as a result of Miracle Nail's negligence – fall squarely within the coverage contemplated by the Continental Policy.

Continental argues that the "only possible interpretation of the allegations . . . is that the factual predicate for the claim falls wholly within a policy exclusion." Continental Reply in Supp. Mot. Summ. J. 5, ECF No. 44. The exclusion on which it relies excludes coverage for "'bodily injury' . . . arising out of services rendered . . . if rendered or used in willful violation of any Federal, State, Municipal, or other law or regulation." Vigliano Aff. Ex. J (Continental Policy, Beauticians' Malpractice Liability Coverage Endorsement). This argument is meritless. Reading the allegations in the underlying complaint, it is easy to imagine myriad other circumstances in which Miracle Nail's negligence caused Lawrence's alleged injury. *See International Paper Co.*, 35 N.Y.2d at 325 (holding that if an insurer "is to be relieved of its duty to defend it is obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation"). *Cf. Maryland Casualty Co.*, 332 F.3d at 160 ("[A]n insurer owes its insured no duty of defense if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured.") (internal quotation marks and citations omitted). Lawrence herself suggests multiple scenarios, all equally plausible, which suggest coverage under the Continental Policy (and do not fall under the policy exclusion): "the wrong (unlicensed or unskilled) employee was assigned to perform the procedure;" " the equipment malfunctioned;" "the salon owner and manager failed to have supervisory protocols in place to prevent the occurrence regardless of who was performing it." Lawrence Mem. in Supp. Cross-Mot. Summ. J. 20. Accordingly, I conclude that Continental's disclaimer was invalid, prohibiting Continental from relying on a policy exclusion as a defense to Lawrence's action.[12] I therefore deny Continental's motion for

---

[12] Continental argues, in the alternative, that a public policy rationale should permit it to rely on a policy exclusion as a defense to Lawrence's action. Continental Reply in Supp. Mot. Summ. J. 8. Specifically,

summary judgment.  Because Continental does not dispute that Lawrence has met all the elements of a proper N.Y. Ins. Law § 3420 action and asserts no defense other than the policy exclusion, I grant Lawrence's motion for summary judgment.

---

Continental relies on language in *K2*, where the Court of Appeals suggested a possible exception to the *Lang* rule. In *K2*, the Court of Appeals noted (but refused to reject or endorse) the decision of the Appellate Division for the First Department in *Hough v. USAA Casualty Insurance Co.*, 940 N.Y.S.2d 41, 42 (App. Div. 2012).  In *Hough*, the court held that an insurer's "disclaimer of its duty to defend its insured in the underlying action does not bar it from asserting that its insured injured plaintiff intentionally."  The Court of Appeals observed that "[t]he *Hough* decision could arguably be justified on the ground that insurance for one's own intentional wrongdoing is contrary to public policy."  *K2*, 2013 N.Y. Slip Op. 04270 (citing *Messersmith v. American Fiduciary Co.*, 232 N.Y. 161, 165 (1921)).

It is true that public policy in New York bars an insured from "seek[ing] coverage when it engages in conduct 'with the intent to cause injury.'"  *J.P. Morgan Securities Inc. v. Vigilant Insurance Co.*, 2013 N.Y. Slip Op. 04272 (N.Y. 2013) (quoting *Town of Massena v. Healthcare Underwriters Mutual Insurance Co.*, 98 N.Y.2d 435, 445 (N.Y. 2002)).  But the New York Court of Appeals has made it clear that "the public policy exception for intentionally harmful conduct is a narrow one, under which it must be established not only that the insured acted intentionally, but further, that it acted with the intent to harm or injure others."  *Id*. (citing *Public Service Mutual Insurance Co. v. Goldfarb*, 53 N.Y.2d 392, 299 (N.Y. 1981) ("Whether such coverage is permissible depends upon whether the insured, in committing his criminal act, intended to cause injury."); *see also Federal Insurance Co. v. Cablevision Systems Development Co.*, 637 F. Supp. 1568, 1582 (E.D.N.Y. 1986) ("In [*Goldfarb* and *Messersmith*], the Court of Appeals distinguished between intended and unintended injuries and held that public policy bars coverage of intentionally caused injuries arising . . . from the insured's violation of a penal statute, but that such public policy did not bar coverage for those injuries which were not specifically intended by the injured.) (citing cases).  While the parties vigorously dispute whether Miracle Nail willfully violated New York law – *i.e.* willfully failed to obtain a license to perform waxing services – they never suggest, nor does the record contain any evidence indicating, that Miracle Nail or its employees acted with an intent to harm Lawrence.  Thus, Continental's reliance on a purported public policy exception as a defense to this action is without merit.

CONCLUSION

For the reasons stated above, Continental's motion for summary judgment is denied and Lawrence's motion for summary judgment is granted. Lawrence is awarded judgment in the amount of $132,526.50 plus interest together with the costs of this action.[13]

So ordered.

John Gleeson, U.S.D.J.

Dated: August 16, 2013
      Brooklyn, New York

---

[13] In its response to Lawrence's Local Rule 56.1 statement, Continental asserts that if it is found liable, it "would not be liable [for] the period of time [ ] from when Lawrence obtained [the state court] judgment and filed the instant lawsuit, a period of approximately eight (8) months." Continental Resp. Lawrence 56.1 ¶ 4. Continental does not support this assertion with a citation to any admissible evidence. Nor does it provide any legal authority for this position in its moving papers. I therefore reject it.